FRANCES E. NORTON *vs.* JOHN J. PERRY *et al.*

Oxford, 1873.—August 18, 1875.

*School district.*

When more than one-third of the voters of a school district present and voting at a school district meeting, object by their votes to the location of the majority, it is sufficient, under R. S., c. 11, § 32, that the clerk of the district make a record of such fact.

The clerk is not required to record the names of the voters objecting. It is enough that he records the state of the vote.

The certificate of the municipal officers of a town, of their determination where a school house is to be placed after an application, notice to all parties interested, and a hearing as required by § 32, is conclusive upon the district.

If the location is defective by reason of the vague description of the premises to be taken, such defect will not revive or render valid a preceding and different location, without a sufficient statute majority, and to which more than one-third present and voting objected and subsequently within the time required by statute, applied under the provisions of the statute, to the municipal officers of the town in which the district was situated, to make a location.

When a location by the municipal officers is void by reason of its insufficient and defective description of the premises to be taken, the district must proceed anew to make a valid location.

The municipal officers have ten days within which to give their certificate to the clerk of the district, of their determination of the place where the school house is to be placed.

They may make their certificate, notwithstanding at some previous time, they may have been unable to agree, and may have so certified, if their certificate is not recorded, and is withdrawn, and their determination is duly filed within the ten days.

ON REPORT.

TRESPASS *quare clausum*, for breaking and entering the plaintiff's close in school district No. 3, the village district in Oxford, and erecting a school house thereon, under proceedings which appear in the synopsis of the arguments of counsel, and in the opinion.

*A. Black, A. A. Strout & G. F. Holmes*, for the plaintiff.

The meeting of the voters of this district, called for the purpose of making this location, first assembled December 20, 1871, and after several adjournments, voted April 1, 1872, by a vote of forty-seven in favor, to twenty-seven opposed, as recorded by the district clerk, to take a hundred square rods of the plaintiff's land for this location. April 26, 1872, four of those voting with the minority upon this question applied to the municipal officers to determine it. Upon due notice, these officials had a hearing of the parties, May 6, 1872, and on the thirteenth of that month, certified to the district clerk their decision, selecting as a site for the school house, certain land of one Durrell.

On June 5, 1872, four other voters of the district applied to the municipal officers to lay out a lot upon the plaintiff's land, as designated by the vote of the district, April 1, 1872; one of the officers refused to act upon this application, but the other two assumed to lay out such a lot as requested. On September 2d, following, the defendants entered upon the lots so laid out, and committed the acts for which this suit was brought. They justify as a building committee of the district. No question is made as to the plaintiff's original title to the land; and if she is found entitled to recover, judgment is to be entered for one dollar damages and legal costs.

The purpose of this suit is to determine which, if either of these locations is legal, and binding upon the district.

The counsel objected, among other defects, to the notice of the meeting of December 20, 1871, which was called by the selectmen, without any statement in their warrant that there was no agent, or that he neglected or refused to act, though a statement of such refusal was entered upon the records. At the adjourned meeting of April 1, 1872, forty-seven voters were in favor of placing the school house upon the plaintiff's land, and twenty-seven were opposeed, as appeared upon the record. On the twenty-sixth day of the same month, four of this minority appealed to the selectmen, stating these facts, and upon due notice, a hearing was had, as requested, on May 6, 1872. Upon the ninth day of that month, both of the selectmen competent to act, (the third being a resident of the school district) filed with the clerk of the district, a statement of their inability to agree, but on the thirteenth, they withdrew it, the clerk not having made any record thereof, and filed with him a certificate of the decision at which they had arrived, and this he recorded. The objection to this paper is the vagueness of the description, on account of which the majority of the district have undertaken wholly to ignore the action of the selectmen in this matter, and to proceed as if they had done nothing. The designation was sufficient to identify the lot to be appropriated for the school house, and that is all that is essential. To lay it out would require distinct action upon the part of the municipal officers. *Jordan* v. *School District No. 8, in Cape Elizabeth,* 60 Maine, 540.

The defendants' justification is the aforesaid vote of the district to place the school house upon the *locus in quo,* and a laying out of the lot by only two of the selectmen, one of whom was a resident of the district, and a party defendant to this action. Against this, the plaintiff shows a location by two disinterested selectmen, upon a proper appeal to them.

The definition given of "object," by Webster, has been cited, "to oppose by word or argument;" but this is not the only mode of objecting; or at any rate, the word "no," in response to the question proposed by the moderator, is a sufficient objection. There can be no more efficient mode of objecting to a measure,

than to try and defeat it by voting against it. It would be imprac-
ticable to have a written protest, signed by those who dissent from
the opinion of the majority, ready to be spread upon the record.

At all events, the appeal being regularly taken, the vote became
a nullity, whether the subsequent action of the selectmen was suf-
ficient to locate the school house upon the Durrell land or not.

*John J. Perry,* for the defendants.

The warrant for the school district meeting of December 20,
1871, in its direction to an inhabitant, expressly recites that it is
addressed to him, because the agent, upon proper application,
refused to call it. *Soper* v. *School District No. 9, in Livermore,*
28 Maine, 193.

Assuming, then, the legality of this meeting of December 20,
1871, the district had the right thereat to fix the location of their
school house. R. S., c. 11, § 24, item 2.

The power to determine where their house shall be placed is
given, in the first instance, directly and unqualifiedly to the dis-
trict. *Goodwin* v. *Nye,* 60 Maine, 402.

This district having expressed its decided preference, it can be
defeated only by antagonistic proceedings strictly in accordance
with the letter of the statute. No such were had. The munici-
pal officers who attempted to designate the Durrell lot May 6,
1872, had no jurisdiction, because the minority in the meeting of
December 20, 1871, did not "object thereto" after the will of the
majority was declared, but tacitly acquiesced in the result. The
statute says, "present and voting" shall "object thereto;" first,
those opposing a proposed location must vote against it, and then,
if outnumbered, must "object thereto." See Webster's definition
of "object." The purpose to take an appeal must thus be indi-
cated at the time the decision is made.

Even if these officers had jurisdiction originally, they lost it,
when on May 9, 1872, they certified to the clerk that they could
not agree. Their power then passed to the superintending school
committee. R. S., c. 11, § 32. The selectmen were *functus
officio* when they had agreed, or had ascertained their inability
to agree. Id. They were as much concluded by their own action

as third persons, and could not legally withdraw their certificate of a fact that determined all their authority in the premises.

But their last report does not fix upon any lot. It is too vague and indefinite to indicate "where the school house should be placed." R. S., c. 11, § 32.

The selectmen were applied to June 5, 1872, to lay out a lot; the owner refusing to sell, gave notice on the twenty-fourth day of that month, that they would meet for that purpose on July 1, 1872, when they laid out the lot now in controversy.

The building committee, charged with the duty of erecting the house, could do nothing else than to build it upon the lot thus selected by the district and by the municipal officers, the attempted designation of the Durrell lot having failed utterly, and the other proceedings therefore, remaining unimpeached.

APPLETON, C. J. This is an action of trespass *quare clausum.* The alleged trespass is the erection of a school house upon the land of the plaintiff. The defendants justify as a building committee chosen by school district No. 3, in the town of Oxford, for the erection of a school house upon the *locus in quo.*

The question presented is, whether there has been a legal location of the school house lot upon the plaintiff's land. Assuming that the plaintiff's land may be taken from her under the right of eminent domain, against her consent, and the compensation therefor fixed by others, without her participation therein, the proceeding must be in strict accordance with the provisions of the statute by virtue of which they were had. If not so, then the plaintiff's estate would remain unaffected, and her right of action unquestioned.

The power "to determine where their school houses shall be located," is given directly by statute to the several school districts, in the first instance. R. S., c. 11, § 24, item 2.

A meeting of the voters of school district No. 3 in Oxford called by the selectmen of that town was held at their school house upon the twentieth day of December, 1871, and continued by repeated adjournments to the first day of April, 1872. It was called for the purpose of taking action relative to the location and construction of a new school house. At the adjourned meeting of April

1st, it was voted : "to accept the report of the committee . . . establishing and locating a lot for a school house on the north-east corner of the F. E. Norton lot, so called, bounded by Pleasant street and by land of George F. Tewksbury and that one hundred square rods be taken for said purpose ;" "voted, to poll the house to make certain the vote on accepting the report of the committee on location of the lot for a school house. Moderator reported forty-seven in favor of accepting the report of the committee of lot for a school house and twenty-seven against it, and it was declared a vote to accept the report of the committee." The above is a transcript from the records of the doings of the district at the adjourned meeting aforesaid.

By R. S., c. 11, § 32, "at any district meeting called for the purpose of removing a school house, or locating one to be erected, if more than one-third of the voters be present and voting, object thereto, the clerk shall make a record of the fact."

The record in this case shows that "more than one-third of the voters present and voting" voted against the acceptance of the report of the committee by which the location of the lot was made on the plaintiff's land. It is argued, that this does not bring the case within the statute, and that those objecting should have interposed a written objection. We think not. To vote against the acceptance of a report is to object against its acceptance. It is the precise and only mode of objecting contemplated by the statute.

Nor is it required that the clerk shall record the names of the persons so objecting by their votes. He is to "make a record of the fact," that is, the state of the votes, and that is all that is required.

Within thirty days after the vote locating the lot on the plaintiff's land, certain members of the district, more than three, after rehearsing the proceedings in relation to the location, and describing themselves "as legal voters in said district numbered three in said town of Oxford, and of the number so present and voting and objecting at said meeting as aforesaid," made written application to the municipal officers "to appoint a time and place in the district to hear the parties and give such notice as is required for a district meeting." A meeting after due notice was had at the time and

place appointed. The selectmen, the defendant, Perry (a member of the board), being an inhabitant of the district, after hearing the parties, at first did not agree "where the school house" should be placed, and so certified to the clerk, but before the certificate was entered of record, they withdrew the same and within the ten days allowed by statute, made and returned their certificate to the clerk of the district, in which they certify that they "have agreed and determined that said school house to be erected as aforesaid shall be located on land owned by C. F. Durell, bounded on the south-west by High street, on the south-east by land of Lemuel Crooker," which the clerk forthwith entered "on his records."

After the clerk has made a record of the fact that more than one-third of the voters present and voting object to the location of the majority, it is then provided by § 32, that "the municipal officers on written application of any three or more of said voters, or any committee of the district, made within thirty days thereafterwards, shall, as soon as may be, appoint a time and place in the district to hear the parties, and give such notice as is required for a district meeting; and after such hearing, they may decide where the school house shall be placed; and shall, within ten days, give a certificate of their determination to the clerk of the district, who shall forthwith enter it on his records; and the district shall proceed to erect, or remove the school house, as if determined by a sufficient majority of the voters present at said meeting; but no such officer residing in the district, shall have any vote in such determination; and when a majority of them reside therein, or do not agree, the superintending school committee shall do all the duties herein required of the municipal officers," &c., &c.

It is not contested that the application to the municipal officers of Oxford was made by three or more of the voters of the district present, voting and objecting to the location voted by the majority of the district; that it was made within thirty days after the vote of the district and that the notice required by the statute was duly given of the time and place of hearing. The municipal officers then had, under § 32, jurisdiction of the question where the school house should be placed, and they gave a certificate of their determination within ten days, to the clerk of the district, who forthwith entered it on his records.

This determination, if valid, is binding and conclusive upon all parties. But to its validity various objections are taken, which we propose to consider.

The location is said to be indefinite in its language. This is denied. But suppose it to be so, then the case presented is that of a determination of the municipal officers which must fail from their vague and uncertain description of the place taken for the school house. The case shows there was "no sufficient majority of the voters present" at the meeting of April 1st, 1872, to finally determine its location. The voters objecting have carried the case by proceedings in the nature of an appeal before another tribunal. The appellate court have rendered a void decision; one which cannot be enforced. The location by the district by a mere majority is no longer in force, because of the appeal taken. Now suppose the location is void for misdescription, it does not render valid a location not made by "a sufficient majority" and vacated by subsequent proceedings. If the district by the requisite majority had made a location void for indefiniteness of description, it must proceed *de novo*, if desirous of a valid location. So, if the appellate tribunal attempt to make a location which fails from the vagueness of the reference to the premises to be taken, a new meeting must be called and the subject again presented to the district for their consideration. In fine, if a location void by reason of its uncertainty is made by the district by a "sufficient majority," or by the municipal officers upon proceedings before them, the result must be the same in each case; that is, the location being void new proceedings must be had, precisely as if they had never before been commenced. So, if the location be void, as the counsel for the defendants contend, the one from which an appeal has been taken is not thereby revived. On the other hand, if the location by the municipal officers was a valid one, it is obviously binding. In either event, therefore, the first location of the district ceases to have validity.

It is objected that the certificate of the municipal officers that they were unable to agree is a bar to all future proceedings on their part. We think not. They have ten days within which to determine the location of the school house. They may be unable to

agree for eight days, and agree on the ninth. A disagreement is not a determination; it is an inability to determine. They have the full time prescribed by statute, within which to form their determination, and they do not lose the statutory time by any temporary disagreement.

The doings of the municpal officers are to be entered by the district clerk "on his records." This was not done, so far as the disagreement was concerned. The certificate of the inability to agree was withdrawn before such entry. Besides, such certificate is only a statement of the then state of mind of the municipal officers, but which they may change within the time given within which they are to "decide where the school house shall be placed."

Further, if it were as contended, the result claimed would not necessarily follow, for when a disagreement takes place, "the superintending school committee shall do all the duties herein required of the municipal officers." R. S., c. 11, § 32.

It follows, that the lot on the plaintiff's land not having been "legally designated," upon the facts as proved or admitted, that the justification set up by the defendants is not established, and that there must be judgment for the plaintiff for one dollar damage and costs, as per agreement.     *Defendants defaulted.*

DICKERSON, BARROWS, PETERS and LIBBEY, JJ., concurred.

VIRGIN, J., having been of counsel, did not sit.